[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13574
_____

D. C. Docket No. 9:10-cv-80735-WPD

ANGELA BIRSTER,
PAUL BIRSTER,

Plaintiffs-Appellants,

versus

AMERICAN HOME MORTGAGE SERVICING, INC.,
a Delaware Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(July 18, 2012)

Before MARCUS and BLACK, Circuit Judges, and HODGES,* District Judge.

PER CURIAM:

_____

* Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

Angela and Paul Birster ceased making home mortgage payments on or around June 1, 2008. The Birsters allege American Home Mortgage Servicing, Inc. (AHMSI), who began servicing their loan on July 30, 2008, subsequently engaged in a relentless assault of harassing phone calls and home inspections in an attempt to collect the mortgage debt, in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*. The district court granted summary judgment to AHMSI after concluding the Birsters' allegations related solely to efforts by AHMSI to enforce a security interest, rather than to collect a debt. And, although 15 U.S.C. § 1692f(6) of the FDCPA was available to the Birsters, the district court concluded the Birsters failed to assert a claim for a violation of that section. We conclude this case is controlled by *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), which was issued after the district court's entry of summary judgment. In light of *Reese*, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## I.

The Birsters own a home in Jupiter, Florida. They refinanced the home on April 19, 2006, through "Option One" to get money for hurricane repairs. The Birsters subsequently entered into a loan modification agreement with Option One

2

on two separate occasions, but ceased making mortgage payments on or around June 1, 2008.  The promissory note and mortgage provide that any missed payment by the Birsters places the loan into a default status.

On July 30, 2008, AHMSI began servicing the loan.  Two months later, on September 30, 2008, AHMSI sent the Birsters a letter stating that the promissory note was "presently in default due to the non-payment of the [August 1, 2008, payment] and the subsequent payments."  The letter advised the Birsters that AHMSI would proceed with foreclosure unless the Birsters cured the default by paying $7,761.14 within 30 days.   AHMSI's letter also contained the following disclosure:

> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS DOES NOT IMPLY THAT [AHMSI] IS ATTEMPTING TO COLLECT MONEY FROM ANYONE WHOSE DEBT HAS BEEN DISCHARGED UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.

On February 2, 2009, U.S. Bank, N.A., as the trustee for the lienholder, initiated foreclosure proceedings against the Birsters.  AHMSI was not a party to the foreclosure.  After being served with the complaint and summons in the foreclosure proceeding, the Birsters retained an attorney to represent them.

3

The Birsters allege AHMSI began its relentless assault on them in 2008. According to the Birsters, AHMSI called them multiple times on a daily basis to collect the past due amounts.  The Birsters allege that most of these calls occurred after AHMSI knew that Angela suffered from an inoperable glioma (brain tumor) that cannot be diagnosed as cancerous or non-cancerous.  As early as April 16, 2009, the Birsters informed AHMSI that they were represented by an attorney, and provided AHMSI with the attorney's name and phone number.  The Birsters advised AHMSI to contact their attorney and to cease contacting them directly.

AHMSI nevertheless continued its direct communications with the Birsters. Angela repeatedly provided AHMSI with the name and contact information for her attorney; regardless, AHMSI refused to stop directly contacting the Birsters. During these calls, the Birsters claim AHMSI used offensive and abusive language towards Angela, and made false representations that the Birsters' home was scheduled for a foreclosure sale.  Angela alleges that after a particularly abusive call on May 5, 2009, she collapsed in her front yard and was rushed to a nearby hospital.

Once the calls ceased, the Birsters claim AHMSI then began intimidating and harassing them at their home.  AHMSI sent agents to "inspect" the property, despite knowing the Birsters resided there.  Although AHMSI was initially

4

inspecting the property on a monthly basis, AHMSI soon began visiting the Birsters' home every day or every other day.  AHMSI's home inspections even occurred on Thanksgiving and Christmas days.

The Birsters allege AHMSI's actions caused Angela to suffer "a deep depression and anxiety, resulting in her attempted suicide on August 17, 2009." On March 23, 2011, Angela was treated again for suicidal tendencies, resulting in a five-day hospital stay.  The Birsters moved to Arizona shortly thereafter, although their adult children continued to live in and maintain the Florida home.

On May 4, 2010, the Birsters filed a complaint in Florida circuit court. AHMSI removed the case to federal court on June 21, 2010.  The district court granted in part, and denied in part, AHMSI's motion for summary judgment on July 7, 2011, and entered final judgment.

## II.

"We review a grant of summary judgment *de novo* and apply the same legal standards as the district court."  *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012).

III.

Section 1692a of the FDCPA defines "debt collector" as the following:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. . . .

15 U.S.C. § 1692a(6).  The substantive provisions of the FDCPA that follow § 1692a prohibit "debt collectors" from taking certain actions.  Therefore, whether an individual or entity is a "debt collector" is determinative of liability under the FDCPA.

The district court, relying on our unpublished opinion in *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458 (11th Cir. 2009), rejected the Birsters' contention that AHMSI's actions were taken solely for the purpose of collecting a debt.  Even accepting the Birsters' allegations as true, the district court noted such allegations related to the foreclosure action.  Thus, the district court concluded the conduct alleged by the Birsters related to enforcement of a security interest, rendering the FDCPA inapplicable with the exception of § 1692f(6).  With regard to § 1692f(6), the district court concluded there was no

6

information "that would indicate any basis for such a claim." Because all that remained after granting summary judgment to AHMSI on the FDCPA claim were state law claims, the district court remanded the rest of the suit to Florida state court.

Following the district court's grant of summary judgment, a panel of this Court issued a published opinion in *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012). Based on the reasoning of *Reese*, it is apparent an entity that regularly attempts to collect debts can be a "debt collector" beyond § 1692f(6) of the FDCPA, even when that entity is also enforcing a security interest. In that case, the Reeses defaulted on a loan they had secured by giving the lender a mortgage on their property. Slip. Op. at 2. A law firm representing the lender sent the Reeses a letter and documents demanding payment and threatening to foreclose on the property if the debt was not paid. *Id.* at 3. The Reeses filed a lawsuit alleging the communication violated the FDCPA, specifically § 1692e, which prohibits a "debt collector" from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at 5; 15 U.S.C. § 1692e. The district court dismissed the complaint for failure to state a claim after finding the law firm was not a "debt collector" under § 1692a(6), and the letter and documents did not amount to a debt

7

collection activity, but instead were an attempt to enforce a client's security interest.

This Court reversed and remanded to the district court after concluding that "[t]he fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e." *Id.* at 11.  We began by noting that the FDCPA's definition of "debt" in § 1692a(5) clearly encompassed the Reeses' payment obligations under the promissory note at issue. *Id.* at 8-9. Relying on the language in the letter demanding payment and referencing debt collection, we then reasoned that the law firm's attempt to collect the money owed on the promissory note was "the collection of [a] debt" within the meaning of § 1692e. *Id.* at 9-10.  Pertinent to this appeal, we stated:

> Even if the . . . law firm intended the letter and documents to give the Reeses notice of the foreclosure, they also could have—and did—demand payment on the underlying debt. . . . A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A debt is still a "debt" even if it is secured.

*Id.* at 11-12.

The *Reese* opinion notes the rule that the law firm asked us to adopt—the same rule AHMSI is asking us to adopt here—"would exempt from the provisions

8

of § 1692e any communication that attempts to enforce a security interest regardless of whether it also attempts to collect the underlying debt." *Id*. at 11. We noted that proposed rule would create a big loophole in the FDCPA: "The practical result would be that the [FDCPA] would apply only to efforts to collect unsecured debts." *Id*. at 12.

Although *Reese* dealt with the applicability of § 1692e, the practical effect of the case is to overrule the reasoning relied on by the district court, since *Reese* allowed the enforcer of a security interest to be held liable under the FDCPA beyond § 1692f(6). *Reese* provides that an entity can both enforce a security interest *and* collect a debt, and constitutes binding precedent on this point. *Id*. at 11.

Here, the Birsters' allegations support a conclusion that AHMSI engaged in debt collection activity, as AHMSI was both attempting to enforce a security interest *and* collect a debt. The September 30, 2008, letter advised the Birsters that AHMSI would foreclose on their home unless they cured the default by paying $7,761.14 within 30 days. The letter also included a disclosure stating "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." Under the reasoning of *Reese*, AHMSI may be liable under the FDCPA beyond § 1692f(6) even though it

was also enforcing a security interest. Thus, we reverse the district court's order concluding otherwise, and remand to the district court for further proceedings in light of *Reese.*

We note that although *Reese* resolves the question of whether FDCPA liability may exist for an enforcer of a security interest, and thus whether AHMSI was engaging in a debt collection activity, the Birsters must still show that AHMSI is a "debt collector" under § 1692a(6). The statutory text clearly states that, to qualify as a "debt collector," the "principal purpose" of "any business" must be "the collection of any debts" or that the business must "regularly collect[] or attempt[] to collect . . . debts." 15 U.S.C. § 1692a(6). The record before us is devoid of pertinent evidence supporting or disputing whether AHMSI is a "debt collector" under this definition. Neither party has offered any evidence on this issue, and AHMSI has not argued that it is an undisputed fact.[1] It is impossible for us to tell whether AHMSI falls within the general definition of "debt collector," and the district court will have to make this assessment on remand.[2] Finally, we

---

[1] Contrary to the Birsters' assertions, AHMSI did not waive its right to argue that it is not a "debt collector" in the September 30, 2008, letter.

[2] AHMSI also argues it is not a debt collector because it became the loan servicer on July 30, 2008, and the Birsters were not placed in default status until September 30, 2008, the date of the default letter. The Birsters counter that (1) the terms of "the promissory note and mortgage provide that any missed payment by the B[irsters] places their loan into a default status," and "[t]he foreclosure complaint alleges that the B[irsters] defaulted on June 1, 2008 by failing to

10

note that on remand, the district court should reassess whether the Birsters met

their pleading burden with regard to a § 1692f(6) violation.

For the foregoing reasons, we **REVERSE** and **REMAND** for proceedings

consistent with this opinion.

---

make a payment when due." The district court has not addressed this issue in the first instance, and will have an opportunity to do so on remand.

11